v. Giorgio Armani C. Cases 20-55314-20-58581 and each side has 10 minutes. This lawsuit addresses the question of the validity of two different types of claims under ERISA. One is a claim brought against First Reliance and the other is brought by First Reliance. And in this case factually, Mr. Cho was diagnosed with pancreatic cancer two months after his death. We have short time so I'm going to just push you along just a bit because I think the panel probably knows the facts. I want to know about the contribution indemnity argument that you're trying to make and why that needs to be under ERISA. Do you have any other avenue to bring that claim? There is no other avenue because it would be preempted by ERISA. ERISA is the exclusive remedy available and this is based on our having to pay benefits under an ERISA plan. So there's no state law clause that would be permitted. So the contribution and indemnity claim, I'll begin with that and then I can work backwards. The district court said that's not allowed because of cases that were previously decided in 1989, Kim and Call. Those cases were decided under Section 502A2 of ERISA, not A3. So why is that important? I understand. Why is that important is the question. I understand there's that distinction but what's not fully explained in the briefing is why that's at all of consequence. It's a consequence because Section 502A2 allows a claim on behalf of the plan as a whole. And here you're only having one fiduciary who breached to another fiduciary who breached. So it's not the basis of what was decided by the Supreme Court and Russell on a typical type of claim, ERISA claim. The other problem with it is, as Call said, the reason that they were reluctant to allow such a cause of action was because you have a breaching fiduciary seeking equitable relief against another breaching fiduciary. Well, Mr. Bachrach, our interpretation of the statute may be informed by the wider statutory scheme. And when I look at ERISA as a whole, aren't its provisions intended to protect participants and beneficiaries, not fiduciaries from each other? It's also intended to protect the plan, plan assets. Because if a plan has to pay off benefits in a case where it's not warranted and not eligible, a person not eligible, that affects every plan participant because premiums are going to rise or a plan could say, we're no longer going to offer this anymore. So it does affect plan participants when somebody, when a plan administrator like Armani here, who was the sole responsibility for enrollment, makes a huge mistake, and not just for Mr. Cho, but for all participants at that point, we realized a few months later, then that does affect the plan and they should be held responsible. But going back quickly on to the point of why is Call and Kim different, they were in 1989. And after that case, we had Verity versus, Verity Corp versus Howe. We had Cigna versus Amara, which have recognized an expansion of ERISA remedy. And we also have the fact that contribution and indemnity are recognized as equitable remedies. In general, we have that ERISA law is based on trust, and trust law recognizes contribution and indemnity. And we now have Salyers. In the Salyers case, I guess I'm struggling with a practical point. I mean, it seems like this, this kind of a problem is not infrequent. I mean, I imagine that there's probably situations where co-fiduciaries have a dispute about who ought to be on the hook for something fairly frequently. And yet nothing has happened since these cases from 20, 30 years ago. Like, I'm really confused by that. So what has been going on all these years when this situation arises? Well, what happens is in the second and the seventh circuit, these claims are allowed. The circuits recognize a claim for contribution and indemnity. And so in this circuit, it's different. Salyers is a recent development. Before that, we had the Supreme Court decision in Ward versus Unum, saying that the same law from California is preempted by ERISA. So in Salyers, they incorporated it into federal common law, which, again, on my brief, I don't think that's allowable. But let's just look at the difference. I think what I really would like to focus on, if Judge Horst, if you don't mind, is the differences between this case and Salyers, because that's the key here. The fact is that we're not co-fiduciaries, as your Honor suggested. The district court recognized that Armani Corporation alone was responsible for enrollment, and they didn't provide the proof when needed. They failed to properly administer premiums. They did more coverage than there was. And then they send out a notice saying you're covered for $500,000, which was wrong. So the problem with focusing on that is that your client, all that time that those premiums were being collected, could have asked or could have insisted that that proof requirement be met, and it didn't. So, I mean, both parties didn't get this done the way that the plan had written it should be done. Well, they did, your Honor, because shortly after, this wasn't a great deal of time. It wasn't like years, as in some cases. It was a matter of months, months. And Reliance Vayner did learn that Armani was mishandling the enrollment. And they said, unlike in Salyers, where this wasn't discovered until afterwards, they said to Ms. Cho, you need to provide proof of good health, and we'll look at it retroactively, so you won't be harmed. We're putting you in the same place you would have been in if this breach hadn't occurred. That happened in Connecticut. That's not true, because according to the record, she let other insurance lapse. She's not in the same position. I do not recall her having $450,000 in other insurance. That's not the question. That's not the question. The question is, you're stating the proposition that she's no worse off. No worse off. That just isn't consistent with what I've read in the record. Whether or not she had the entire coverage that you're now saying she shouldn't get is very different than saying she has not been harmed at all by this passage of time. And that's just not true. I don't think that was developed in the record, Your Honor, as to the amount of that coverage. I don't recall seeing that. And maybe it is, and I'll allow counsel to correct me. But this policy allowed $50,000 of guaranteed coverage, and that was paid. So if that other coverage was $100,000 that she let lapse, wouldn't that be the limit? That was never by counsel, by the way. But if she let lapse $100,000 or $50,000 in addition to the 50, that's her limited damages. That is all that it is, not the $450,000 additional amount. But, Your Honor, I think it's also important to look at the language in this policy that also distinguishes this claim from Salyer's. And again, Salyer's didn't say the employer is always going to be the agent. It said in certain circumstances. And this policy had something that the one, and I'm going to save time here, but this policy has something that Salyer's didn't. It has an anti-waiver. And it says no agent can waive it. And under the estate of Kennedy case from the Supreme Court, under the planned document rule, Supreme Court, you can't waive, the policy can't be ignored. It has to be enforced. And the district court here, I think, doubly made an error by saying not that First Reliance waived it, the employer waived a provision that is not allowed to waive. So this is the distinguishing factor from Salyer's. And it is why Salyer's is inapplicable to this case. And I'd like to reserve the remaining time for the follow-up. Doesn't Salyer's teach us, though, that we're not supposed to compartmentalize in the ERISA arena, that from the claimant's perspective, to do that is this ping-ponging between the administrator and the employer. And from her perspective, it doesn't make any difference. She was led to believe that she had the coverage. And now the claim is that that isn't the case. But Salyer's, the non-waiver clause and the other things you point out, is really saying to us, we should look at it from the claimant's perspective. Isn't it? No, Your Honor. In Salyer's, the court was very specific in its wording. And it said, we don't know what the agreement and the relationship was between the employer and MetLife. In this case, we do. We provided all that information. And based on all that information, the court determined that it was Armani's responsibility. They were the fiduciary for enrollment, not us. So whereas there was a lack of information there, we have it. And it shows that it was entirely the fault of Armani in this case. All right. Your time has expired, but I'll give you a minute for rebuttal. All right, since we asked you a number of questions. OK. Before we start the clock on the next two lawyers, you're dividing your time seven and three. Is that what I understand? And so who's going first? I believe I will go first. May it please the court. Wait, one second, before we start the time. So you're the seven minutes, OK? Correct. That's right, OK. Yes, Judge. So I'm going to hold you to your time unless we have questions. But what I want to tell you that are the three minutes, and I see this, sometimes the first person just goes wild. And then people get really nervous that they're not going to get your three minutes. You don't have to virtually take them off the podium and leap at them. You'll get your three minutes. If we're asking him, if we're delaying him with questions, I'll still give you your three minutes. So you can relax on that, OK? All right, then we'll go back to you. And Christian Garris, you can proceed. Thank you, Your Honor. May it please the court. Christian Garris on behalf of Eppley Cho. Responding to counsel's comments directly about Salyers and why this case is different factually, and therefore, there should be a different result. In terms of the longevity of coverage in Salyers, the $250,000 of coverage was only in effect for about 60 days before the husband, David Wolk, in that case died. Here, Mr. Cho had coverage for well over a year and received statements every month stating that he had $500,000 in coverage. He received statements twice a month stating that he had paid the premiums for $500,000 in coverage for spousal coverage. And there was just never any request for any further information. So just like in Salyers, a reasonable insured would think, well, I've done everything that's requested, and I have this coverage in force. And it was done. Let me ask you this. OK, so the effective date of dependent insurance clause in the policy clearly states that proof of good health is required. In the face of that, what is your strongest argument that the policy is ambiguous enough for us to construe it in your favor? Well, I think there are many passages in the policy that state that there is no evidence of good health that's required or evidence of insurability. And those two phrases are sort of mixed together. But it certainly is true that in one section of the policy, it does state proof of good health is required. That is absolutely correct. So I would say that the policy is ambiguous because of all the other provisions stating that it's not needed. But I think to answer, Judge Callahan, your specific question, what is the strongest argument, I think it's waiver. Exactly what occurred in the Salyers case, where the court also was confronted with a somewhat ambiguous policy about what was required and what wasn't required for spouses. But ultimately, the case was decided on the issue of waiver. They accepted the premiums. They stated affirmatively that the person had the requested coverage. It was a coverage limit available under the plan. And therefore, the court had no problem of finding a waiver similar to the Silva case in the Eighth Circuit. And Counsel, could you comment on the argument about the presence of the non-waiver clause in this circumstance, which apparently was not the case in the Salyer case? Yes, there is a non-waiver clause, which is frequently found in these policies. But there's also a conformity with law provision, which states that if any provision of the plan does not conform with the law, it's void, which I stated in my brief and cited that page of the record. So, waiver is not something that's a provision of the plan. It's an independent legal doctrine. And therefore, it's applicable to any plan. You can't state something in your plan that makes you immune from certain legal doctrines. And that's why the plan actually has the safety valve provision saying, well, if there's a provision in here that's improper, that provision doesn't apply. Is there case authority that you can cite us to for the proposition that you can't, in this context, you can't ignore a non-waiver provision in the plan for the reasons you've just articulated? I don't know of any case that discusses that one where the other, at least not in the Ninth Circuit. I don't know if it's arisen before. I don't know if it's something that's needed to be approached here. I just think the doctrine of waiver applies to a legal contract between private parties, regardless of a provision of the plan saying, well, we don't like this legal doctrine, so we don't want it to apply. I just don't think you can override legal doctrines or case law or statutory law by including such provision. Does the contribution or indemnity issue concern you at all? That's really not an issue that affects us directly. I will state, though, that this plan has a self-administration provision that's referenced in the record, which explicitly states what the Salaries Court found MetLife was doing, where they had essentially delegated, in that case, all the duties of collecting premiums, collecting enrollment data, and submitting all of that to MetLife. Here, there's an explicit provision between the employer, Armani, and First Reliance, stating that all of this insurance-related activity is being delegated to Armani, and therefore, that's why the agency rule applies here, because First Reliance is designating, explicitly, Armani to act as its agent in collecting enrollment information and premiums. So I just think it's right on all fours with Salyers. The only other distinction is here, Mr. Cho died on June 28th, and there was a request for further information on June 2nd, but they didn't change his premiums until June 19th. So only nine days before he died did they change the premiums to the $50,000 rate, and they didn't provide notice of that to Mr. Cho until July 17th, and the plan requires any changes to have 31 days notice, and they just didn't do that here. So I think that's another element of why this case, maybe factually, is even stronger than the facts in Salyers. And if the court doesn't have any other questions, I'm happy to submit on the record. Okay, no further questions. Thank you, Your Honors. Thank you. All right, Mr. Celadon dash something. I can't, it doesn't show on my screen here, so. It's actually Mr. Kleiner. Oh, oh, up there. Oh, I'm seeing down on that. Oh, that's right, Mr. Kleiner. Okay, so that's easy. All right, thank you. Good morning, Your Honors. Matt Kleiner on behalf of an LE and third-party defendant. Excuse me, Giorgio Armani Corporation. I wanna get into the point that were, the questions that were raised earlier regarding, does it really make a difference if it's an A2 versus an A3 claim? And really, it's a distinction without any difference. Section A3 on its face does not allow such relief in the form of indemnity. A3 only allows an action to be filed by a fiduciary to redress certain violations of ERISA that don't apply here. Specifically, first reliance is not seeking to enjoin a violation of the ERISA plan documents at issue, nor is first reliance seeking to appropriate equitable relief to redress a violation of the plan or otherwise seeking to benefit. Well, do you dispute that indemnity is equitable? I'm sorry, I think your question was, do I dispute that equity is equitable? That indemnity is equitable. No, Your Honor, I do not. Do you, I mean, one problem I have with the premise of your argument is that the Supreme Court has told us that subsection A3 is broad, broader than A2. So what do we do with that? They're not the same. They aren't the same, but there are limitations in A3 and it gives you the specific situations in which a fiduciary may bring a claim. And again, they all ultimately relate to enforcing the plan terms and benefiting a plan participant or a beneficiary. They're not here to serve the kind of self-serving interests of a fiduciary in indemnifying itself against claims that are being brought against it. And that's what the court in Miali said that basically inter fiduciary indemnity is not the sort of remedy that was envisioned by A3. I guess, I mean, I don't know what the right answer is sitting here at this moment, but my struggle is that the plan defines the relationship between your client and the insurance company. So it's not like, you know, what should happen between the two of you has nothing to do with the plan. It does have something to do with the plan. It's defined in there. You're correct that the relationship is defined in there, but ultimately the question is whether or not an indemnity claim can be brought under A3. And if you look at really getting into different aspects of trust law and things that First Alliances Council is trying to raise, the Supreme Court has repeatedly emphasized that if this remedy isn't there and you shouldn't imply a remedy that isn't authorized by ERISA. ERISA is a comprehensive and reticulated statute. And it's really the product of years and years of congressional research and history. And so in putting this together, and I think you had asked earlier about why aren't there any other claims out there? You know, these cases are 30 years old. Well, I think part of it is because the courts have respected the fact that this is a congressional statute and it specifically sets forth the statutes, the remedies that are available. And this inter fiduciary remedy is not available. And the courts have recognized that and refused to allow it. Well, I think the Supreme Court would be interested in this if we get it wrong. Okay. Because I think ERISA is, it's very important to the overall fabric of American life. And so they do have an interest in ERISA cases and usually the only other people are ERISA lawyers that do and then they come to us. But if we get this wrong, I was curious about Mr. Bachrach's argument saying, well, since it appears that your client didn't do a good job here. And so if insurance companies, if plans are paying out money for a job that you didn't do well, does that take away from the employees that ERISA is really trying to protect? Your Honor, I think it does kind of almost the opposite because by bringing in and allowing co-fiduciary claims, it interferes with ERISA's kind of efficiency and providing beneficiaries with an expedient revenue. ERISA is designed such that there is no trial. There are applicable standards of review. There's very limited discovery. And so if you throw in co-fiduciary claims against each other, you're going to be delaying the rights of beneficiaries to ultimately getting the benefits to which they're entitled to in the plans while co-fiduciaries battle out as to who's responsible for what under the plan documents. Right. Couldn't a district court handle that by just managing the litigation? Ultimately the litigation is gonna get spiraled into the beneficiaries kind of having to sit on the sidelines while the fiduciaries fight this dispute. I don't see how the district court would be able to kind of segregate these claims out while the beneficiary is, again, ultimately left hanging while the co-fiduciaries are battling out the issues. And I'd like to point out too- Well, you're over your time. But if my colleagues have additional questions, you can go on. Do either of you want to ask additional questions? No, thank you. All right, then no. You're done, thank you, Your Honor. Thank you. All right, Mr. Bachrach. You're on mute. You're muted. Again, I apologize. Council has said that in Thalia's case, the coverage was only in place for 60 days. If I'm not mistaken, that's entirely inaccurate. There was coverage for years and years and it was just changed within 60 days. But Your Honor, Judge Callahan, you've mentioned a reasonable person. A reasonable person would have received that handout that said proof of good health is required that Mr. Garris incorrectly stated in his brief did not. And it clearly did. And under PCOTA, you can't rely on equitable relief when it's contrary to the terms of the plan. On the waiver issue, I would just point out that in the estate of Kennedy case, the court refused to accept waiver by one of the parties because it was contrary to the language in the plan. The plan document rule is the most important rule. You have to follow the language in the plan. And that's why, Your Honor, we're asking that the district court decision be reversed its entirety and also reinstatement of the contribution indemnity claim. Thank you, Your Honors. All right, thank you both. Thank you all for your argument in this case. And the court's going to take a short recess of 10 minutes and then we'll reconstitute to hear the last case.
judges: Callahan, Forrest, Seeborg